In the Matter of the ESTATE OF
Bonnie Jean MACK, Deceased.

Ralph W. WELCHMAN, Michael Welchman, and Eric Welchman, Appellees,

v.

Larry W. MACK, Administrator of the
Estate of Bonnie Jean Mack,
Deceased, Appellant.

No. 84–1678.

Supreme Court of Iowa.

Aug. 21, 1985.

Michael J. McCarthy of McCarthy & McCarthy, Davenport, for appellant.

Donald B. Clark of Norton & Freese, P.C., Lowden, for appellees.

Considered by REYNOLDSON, C.J., and HARRIS, LARSON, SCHULTZ and CARTER, JJ.

CARTER, Justice.

This appeal concerns the effect on Iowa real estate of a decree of the circuit court of Marion County, Missouri dissolving the marriage of Bonnie Jean Welchman and Ralph W. Welchman. When that dissolution decree was entered on March 14, 1983, Bonnie Jean and Ralph held title as joint tenants with right of survivorship in approximately 115 acres of real estate located in Cedar County, Iowa. The decree dissolving their marriage provided:

> The Court sets off to the petitioner [Bonnie Jean] the farm located in Cedar County, Iowa, more particularly described as [full description of subject real estate] to be the petitioner's separate property subject to the indebtedness thereon.

No provision was contained in the decree for the execution of an instrument of conveyance by Ralph to effectuate the disposition which the court made of this Iowa real estate.

Following the dissolution of her marriage to Ralph by the Missouri court, Bonnie Jean married Larry Mack. On March 7, 1984, Bonnie Jean died. An estate was opened for her in Cedar County, Iowa in which Larry Mack was appointed as her personal representative. Ralph, joined with Michael Welchman and Eric Welchman, sons of Ralph and Bonnie Jean, to commence the present action against her estate. The action seeks a declaratory judgment that Ralph is the owner of the 115 acres purportedly awarded to Bonnie Jean in the Missouri dissolution decree. For convenience, Ralph will be identified in the remainder of this opinion as if he were the sole plaintiff.

Ralph filed a motion for summary judgment contending that it was beyond the power of the Missouri court to alter the title to real estate located in Iowa. Based on this premise, he asked the court to rule that title to the Cedar County farm remained in joint tenancy and, upon Bonnie Jean's death, enured to him.

In both a resistance filed to Ralph's motion for summary judgment and a cross motion for summary judgment, Bonnie Jean's personal representative asserted that, because the Missouri court had in personam jurisdiction over Ralph and Bonnie Jean, its decree represents a final determination of the rights of the parties *inter se* with respect to the Iowa land. The district court sustained Ralph's motion for summary judgment and, inferentially, denied the personal representative's motion.

A declaratory judgment was entered establishing that the Cedar County land was owned in joint tenancy at the time of Bonnie Jean's death and is now owned by Ralph as surviving joint tenant. Bonnie Jean's personal representative has appealed from that judgment.

I. *Jurisdiction to Consider the Appeal.*

Although not argued by the parties we are obliged to satisfy ourselves as to our jurisdiction to consider the present appeal under Iowa Rule of Appellate Procedure 1. The petition for declaratory judgment which presented the claims decided by the district court was in several counts presenting three unrelated claims. Only one of these claims was heard and determined prior to the notice of appeal.

Ordinarily, piecemeal adjudication of an action for declaratory judgment would not present a final judgment for purposes of appeal. In the present case,

however, the petition for declaratory judgment was filed in the estate of Bonnie Jean Mack and docketed in probate as permitted by Iowa Code section 633.11 (1983). We have recognized that under Iowa Code section 633.36 all orders of the court in probate proceedings are final judgments if entered on notice and hearing. *In the Matter of the Estate of Young,* 273 N.W.2d 388, 391 (Iowa 1978). The present appeal is from such an order and, as a result, we may consider it without regard to the final disposition of the other issues in the petition for declaratory judgment.

## II. *Effect of the Missouri Dissolution Decree on Parties' Interest in Iowa Real Estate.*

The arguments of the parties on appeal mirror the grounds on which their respective motions for summary judgment were based. In resolving these conflicting claims to the Cedar County land, the district court recognized that the Missouri court's in personam jurisdiction over Ralph would have sustained a decree requiring him to convey the Iowa property to Billie Jean. The Missouri decree did not contain such a directive.

The district court also indicated in its decision that, even in the absence of a requirement for a conveyance in the Missouri decree, that decree could have been the basis for securing a judgment from an Iowa court requiring Ralph to convey the property to Billie Jean. Because such a judgment was not secured prior to Billie Jean's death, the district court concluded that the property passed to Ralph by reason of the survivorship aspects of the joint tenancy title.

Although some courts have held that it is beyond the power of the court to affect the ownership of real estate in a foreign state in any way, *see McRary v. McRary,* 228 N.C. 714, 717, 47 S.E.2d 27, 29–30 (1948); *Clouse v. Clouse,* 185 Tenn. 666, 673, 207 S.W.2d 576, 579 (1948), this view has been largely discredited. As one commentator has noted, most judgments operate in personam and their effectiveness flows from the fact that they provide for a final determination of the rights and obligations of people rather than property. Currie, *Full Faith and Credit to Foreign Land Decrees,* 21 U.Chi.L.Rev. 620, 622–23 (1954) (hereinafter cited as *Currie* ).

In recognition of the in personam aspects of a foreign judgment, several courts have held that, if a court with jurisdiction over a party owning land in another state orders that party to convey the land as part of an adjudication of the rights of the parties before the court, such a judgment is entitled to full faith and credit in the situs state. *Fall v. Eastin,* 215 U.S. 1, 8, 30 S.Ct. 3, 6, 54 L.Ed. 65, 69 (1909); *Argent v. Argent,* 396 F.2d 695, 697 (D.C.Cir.1968); *Varone v. Varone,* 359 F.2d 769, 770–71 (7th Cir.1966); *Ivey v. Ivey,* 183 Conn. 490, 493, 439 A.2d 425, 427 (1981); *Andre v. Morrow,* 106 Idaho 455, 461, 680 P.2d 1355, 1361 (1984); *Rozan v. Rozan,* 129 N.W.2d 694, 700 (N.D.1964).

We granted full faith and credit to the decree of another state involving ownership of Iowa land in *Matson v. Matson,* 186 Iowa 607, 173 N.W. 127 (1919). A Washington decree ordered a husband to convey certain property located in Iowa to his wife. He absconded without doing so, came to Iowa, and attempted to transfer the property to a person other than a bona fide purchaser for value. We held that this purported transaction could be set aside and in so doing gave full faith and credit to the Washington judgment.

Some courts which recognize the validity of decrees from other states requiring the conveyance of realty located in the situs state refuse to recognize foreign decrees which merely adjudicate ownership but do not order a conveyance to carry out the intended disposition. *Lockley v. Lockley,* 257 Ark. 603, 612, 519 S.W.2d 52, 58 (1975); *Rozan,* 129 N.W.2d at 700–01. This view also has been criticized. *Currie* suggests that it has arisen primarily because, historically, courts have lacked an obvious procedural device for effectuating in the situs state a mere declaration of rights made by a foreign court—a situation which has now

been remedied by the widespread use of the declaratory judgment. *Currie,* 21 U.Chi.L.Rev. at 625. Consistent with this belief, the better reasoned cases have determined that, regardless of whether there is an order for a conveyance, if a court having personal jurisdiction over the parties adjudicates their rights or obligations in reference to any *res,* wherever situated, its decree is entitled to full faith and credit in the situs state. *Barber v. Barber,* 51 Cal.2d 244, 247, 331 P.2d 628, 630–31 (1958); *Gammon v. Gammon,* 41 Mont. ——, ——, 684 P.2d 1081, 1085 (1984); *Miller v. Miller,* 109 Misc.2d 982, 984, 441 N.Y. S.2d 339, 341 (1981).

■ The latter view, which we believe is preferable, is consistent with the following rule espoused by the American Law Institute in section 43 of Restatement (Second) of Judgments:

> A judgment in an action that determines interests in real or personal property:
>
> ... [w]ith respect to the property involved in the action;
>
> (a) Conclusively determines the claims of the parties to the action regarding their interests; and
>
> (b) Has preclusive effects upon a person who succeeds to the interest of a party to the same extent as upon the party himself.

A contrary thesis can only be justified on the ground that granting recognition to the foreign adjudication would violate some fundamental policy of the state where the land is located. Any exception to the requirement of full faith and credit due to a variance in the policy of the situs state and that of a foreign jurisdiction may only be based upon the most serious and justifiable interests of the forum. *Milwaukee County v. White,* 296 U.S. 268, 273–76, 56 S.Ct. 229, 232–33, 80 L.Ed. 220, 225–27 (1935); Weintraub, *Due Process and Full Faith and Credit Limitations on a State's Choice of Law,* 44 Iowa L.Rev. 449, 477 (1959); Comment, 45 Iowa L.Rev. 413, 418–19 (1960). We have, in the past, recognized such exceptions with respect to devolution

of title to Iowa land upon death. *In re Estate of Barrie,* 240 Iowa 431, 435, 35 N.W.2d 658, 661 (1949); *Norris v. Loyd,* 183 Iowa 1056, 1065, 168 N.W. 557, 559 (1918). Such views as to the full faith and credit clause in probate matters are consistent with those of the Supreme Court in *Clarke v. Clarke,* 178 U.S. 186, 193, 20 S.Ct. 873, 875, 44 L.Ed. 1028, 1032 (1900).

With regard to foreign decrees dissolving marriages and distributing marital assets, we perceive no reason for failing to give the same recognition to those provisions of a foreign decree disposing of real estate, wherever situated, that we have accorded other aspects of foreign decrees. *See In Re Marriage of Winegard,* 278 N.W.2d 505, 508 (Iowa 1979). We prefer to avoid the piecemeal disposition of marital assets which this approach would produce.

■ In choosing whether to give full effect to dissolution decrees from other states, an affirmative choice does not directly implicate the full faith and credit clause of the federal constitution. That is the situation in the present case. While we suspect that the result which we reach is mandated by that clause we choose to adopt it in any event under principles of comity. *See* Schwartz, *Fall v. Eastin Revisited: Extraterritorial Effect of Foreign Land Decrees,* 54 Dickinson L.Rev. 293, 297–302 (1950).

■ The remaining issue is whether Bonnie Jean's failure to seek assistance from an Iowa court in ordering a change in the title of the Iowa land during the twelve month period between the Missouri dissolution decree and her death results, as the district court believed, in title passing to Ralph as surviving joint tenant. We conclude that it does not.

Any assertion by Ralph following the Missouri dissolution decree that the title remained in joint tenancy is correct, if at all, only in an abstract sense. Even if title technically remained in joint tenancy, Bonnie possessed a chose in action which could be used either offensively or defensively to preclude Ralph's bare legal title from ever

becoming a right of enjoyment. That chose in action may be similarly utilized by her personal representative in the present action by reason of our survival statute, Iowa Code section 611.20 (1983).

The district court erred in granting Ralph's motion for summary judgment and in not granting the motion for summary judgment filed by Bonnie's personal representative. The judgment is therefore reversed and the cause remanded for further proceedings consistent with our opinion.

REVERSED AND REMANDED.